UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

BRAND TECHNOLOGIES, INC.,

Plaintiff,

v.

COX ENTERPRISES, et al.,

Defendants.

Case No. CV 16-05038-AB (JEMx)

ORDER **GRANTING** MOTION TO DISMISS

Before the Court is a Motion to Dismiss filed by Defendants Cox Enterprises, Inc., Cox Media Group LLC, Verizon Digital Media Services, Inc.. AOL Inc, 5 Minutes LLC, and Brightcove, Inc. ("Defendants"). (Dkt. No. 58.) Plaintiff Brand Technologies, Inc. ("Plaintiff") filed an Opposition and the Defendants filed a Reply. The Court heard oral argument on December 5, 2016. For the following reasons, the Court **GRANTS** the Motion.

## I. BACKGROUND

This action arises out of the Defendants' alleged unauthorized use of Plaintiff's short-form films. Plaintiff filed its original Complaint on July 8, 2016. After the

Defendants filed a Motion to Dismiss, Plaintiff filed its First Amended Complaint ("FAC"). (Dkt. No. 49-1.) The FAC asserts the following claims: copyright infringement (claims I-III), violation of the Digital Millenium Copyright Act (claim IV), federal trademark infringement (claim V), violation of the Lanham Act (claim VI), common law unfair competition (claim VII), and violation of Cal. Bus. & Prof. Code § 17200 et seq. (claim VIII). *See* FAC Dkt. 49-1.

The FAC consists of 200 pages and 567 allegations, many of them boilerplate and duplicative, and many difficult to comprehend. The core allegations of the FAC appear to be as follows.

Plaintiff owns the copyrights 545 short-form online videos ("Brand Registered Works" or "Works") registered with the United States Copyright Office. FAC ¶ 3, 56. Each of the Brand Registered Works is marked with a logo of Plaintiff's d/b/a "Bluefin Media," and is further marked with one of Plaintiff's online brands ("GossipCetner," "DIY Fashion Center," etc.). FAC ¶ 64.

Plaintiff licensed Defendant 5 Minutes, a subsidiary of defendant AOL, to distribute the Brand Registered Works over the internet. FAC ¶ 29. The license agreement terminated on April 7, 2015. FAC ¶ 33. As of that date, there has been no permissible internet use by anyone of the Brand Registered Works. FAC ¶ 97. However, all 545 the Brand Registered Works have continued to be embedded on webpages owned by defendant CMG. FAC ¶ 107. The CMG webpages allow a person to view the Works using a video player embedded in the website; the embedded player was designed and distributed by defendant Brightcove. FAC ¶ 109.

The unauthorized Brand Registered Works are "tagged" with metadata that enables search engine optimization, tracking, and monetization functions common in the online video market ("BRW Metadata"). FAC ¶ 65, 137. Plaintiff claims that the BRW Metadata attached to the Works is the same as, or confusingly similar to, Plaintiff's trademarks that are associated with the Works. FAC ¶¶ 138-139. Problematically, the FAC alleges only in the passive voice that the Works "are

'tagged'" with the metadata, without alleging facts showing that the Defendants "tagged" the Works. Plaintiff attributes the tagging to Defendants by making an assumption, and not pleading facts, as follows: "Brand has been greatly injured . . . by Defendants misleading, incorrect, false, and unfair 'tagging' of the Brand Registered Works. . ." FAC ¶ 72 . Plaintiff appears to claim that by so tagging these unauthorized "copies" of its Works, the Defendants lure viewers to the unauthorized videos and profit from resulting advertising revenue. FAC ¶¶ 137, 141-144. Plaintiff has received no revenue from the unauthorized use of the Works. FAC ¶ 148.

Thereafter, the FAC details 15 "exemplary infringements" of the Works. *See* FAC ¶¶ 149-463. These 15 different examples of infringement are pled in a similar if not identical pattern: they identify by location (e.g., several websites pertaining to Austin, Texas are grouped together) the CMG website that the Works appear on and tally the many works that appear thereon. Finally, the FAC asserts the eight causes of action, which repeat many of the same allegations. *See* FAC ¶¶464-567. Plaintiff seeks damages, statutory damages, injunctive and declaratory relief, and attorneys' fees, and costs.

Defendants now move to dismiss claims IV through VIII.[1]

## II. LEGAL STANDARD

Fed. R. Civ. Proc. ("Rule") 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must provide enough detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Complaint must also be "plausible on its face," allowing the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility

[1] Defendants do not move to dismiss Claims I-III, which are for copyright infringement.

that a defendant has acted unlawfully." *Id*. Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Under Rule 12, a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on the motion, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (2009) (internal quotation marks omitted). The court generally may not consider materials other than facts alleged in the complaint and documents that are made a part of the complaint. *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994*), overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). However, a court may consider materials if (1) the authenticity of the materials is not disputed and (2) the plaintiff has alleged the existence of the materials in the complaint or the complaint "necessarily relies" on the materials. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted); *Branch*, 14 F.3d at 454. The court may also take judicial notice of undisputed facts that are contained in extrinsic materials. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Lee*, 250 F.3d at 689-90.

## III. DISCUSSION

### A. Plaintiff's Trademark Claims and Related State Law Unfair Competition Claims Fail.

Defendants move to dismiss Plaintiff's trademark and related claims on two grounds: that they are preempted by the Copyright Act in conjunction with *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), and in the alternative, that they fail to state a claim. Some of the FAC's allegations read like a word salad, making it quite difficult to pinpoint the nature of Plaintiff's trademark claims. However, the Court reads them to be as follows.

Plaintiff's fifth claim is for trademark infringement under 15 U.S.C. § 1114. It is alleged against Defendants Cox Enterprises Inc. ("CEI"), Cox Media Group ("CMG"), and Brightcove. This section prohibits a person from using "in commerce any reproduction . . . or colorable imitation of a registered mark in connection with the sale . . . [or] distribution . . . of goods or services," or to apply such marks to labels or packaging in connection with the sale of goods or services, in a way that "is likely to cause confusion or mistake, or to deceive." 15 U.S.C. § 1114(1). Plaintiff alleges that CMG and Brightcove's "use of Brand's marks in connection with on-line short-form video distribution . . . is likely to cause, and has caused, confusion, mistake or deception as to the affiliation, connection, or associated of the video distribution, syndication, and advertising with Brand." FAC ¶ 537.

Plaintiff's sixth claim is for violation of the Lanham Act § 43(a). It is alleged against all Defendants. Section 43(a) prohibits producers of consumer goods from using a "false designation of origin" that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a). Plaintiff alleges that "Defendants have deliberately and willfully attempted to trade on Brand's valuable and hard-earned goodwill in its name and marks and the reputation established by Brand in connection with its products and services, as well as in order to confuse consumers (e.g., online video advertisers, traffic affiliates, search engine crawlers, linking websites and webpages, and video end users) as to the origin and sponsorship of Defendants' goods and to pass off their products and services in commerce as those of Brand." FAC ¶ 542.

**1. Plaintiff's Trademark and Related Claims are Not Barred by Preemption or Foreclosed By *Dastar*.**

Defendants' preemption/*Dastar* argument refers to the Copyright Act's

preemption clause, 17 U.S.C. § 301(a)[2], and follows with an extended discussion of *Dastar*, but *Dastar* does not discuss the preemption clause. Rather, *Dastar* merely construed the Lanham Act's phrase "origin" of "goods" to determine whether the plaintiff's claim was cognizable under the Lanham Act. The Court held that a defendant who edited and released under its own name a work that was in the public domain could not be held liable by the original work's creator for reverse passing off under the Lanham Act. *Dastar*, 539 U.S. at 33-37. If Plaintiff is not asserting reverse passing off claim, then *Dastar* has no application. The Court will therefore consider whether Plaintiff is asserting a claim for passing off, or for reverse passing off.

Whereas " '[p]assing off' . . . occurs when a producer misrepresents his own goods or services as someone else's. . . '[r]everse passing off'. . . [is where a] producer misrepresents someone else's goods or services as his own." *Dastar*, 539 U.S. at 27 fn.1. It is difficult to pin down the exact nature of Plaintiff's trademark claims and the opposition's muddled discussion suggests that Plaintiff does not recognize the distinction between passing off and reverse passing off. For example, the Opposition characterizes as "classic 'passing off'" Plaintiff's allegation that "Defendants . . . packaged [the Works to indicate] . . . to consumers . . . that the Brand Video is one of <u>Defendants</u>' products," *see* Opp'n 7:16-25, but such conduct would be *reverse* passing off. Several sentences later, Plaintiff argues the opposite conduct – that "[t]his is passing off: 'Defendants' use of [Brand's identifiers] create[s] the false and deceptive impression that the [Brightcove/CMG/VDMS embedded video package] are associated with and/or manufactured by [Brand].' " Opp'n 8:9-11.

To ascertain the true nature of Plaintiff's claim, the Court turns to the FAC. This is not a straightforward task given the FAC's verbosity. But the gravamen of all of Plaintiff's trademark and trademark-related claims *appears* to be that the Defendants "tagged" Plaintiff's Works with metadata identical or confusingly similar

---

[2] The Copyright Act preempts "all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright." 17 U.S.C. § 301(a)

to Plaintiff's trademarks in order to make the unauthorized Works findable by internet users. *See* FAC ¶ 65-72; *see* also FAC ¶ 542 (Defendants attempted to "confuse consumers. . . as to the origin and sponsorship of Defendants' goods and to pass off their products and services in commerce as those of Brand."). Thus, to the extent the trademark claims amount to passing off, Plaintiff appears to allege that Defendants as passing off their own products as those of Plaintiff. The FAC *does not appear* to allege that Defendants are packaging Plaintiff's Works in such a way that consumers believe those Works originate from Defendants, so Plaintiff does not appear to be alleging a reverse passing off claim. Thus, contrary to Defendants' position, a "straightforward application of *Dastar*," Mot. 8:19, which is concerned with reverse passing off, does not show that Plaintiff's trademark claims, which are for passing off, fail.

Insofar as Defendants imply that Plaintiff's trademark claims are plainly preempted by the Copyright Act because the trademark claims are really equivalent to copyright claims, that argument is not persuasive. Again, the gravamen of the trademark claims appears to be that Defendants are using Plaintiff's trademarks (or confusingly similar ones) to distribute the unauthorized works. Thus, the alleged trademark violations are distinct from the copyright violations.

The Court therefore rejects Defendants' preemption/*Dastar* argument.

**2. Plaintiff Fails to Plead Facts Supporting Its Trademark Claims.**

Whether the trademark and related claims are otherwise properly pled is another matter. To establish a claim for either trademark infringement under § 1114 or false designation under Lanham Act § 43(a), a plaintiff must prove that the defendant "(1) use[d] in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question." *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902–04 (9th Cir. 2007); *see also Int'l Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 917 (9th Cir.

1980) (test for trademark infringement under § 1114 same as test for false designation under Lanham Act § 43(a)).

Defendants attack Plaintiff's pleading of the third element – that the mark is likely to cause confusion as to the source of the goods. They argue that while Plaintiff alleges that Defendants have used Plaintiff's marks (or confusingly similar marks) on Defendants' own goods, *see* FAC ¶ 542, the FAC makes no references to any of Defendants' own goods, but rather only to Plaintiff's Works. The Court agrees that to the extent Plaintiff attempts to plead that Defendants use Plaintiff's marks on Defendants' goods, such a claim is not well-pled because the FAC does not refer to any goods produced by Defendant, but only to Plaintiff's Works that Defendants allegedly unlawfully distribute.

However, Plaintiff also alleges that Defendants use confusingly similar marks in connection with their unauthorized distribution of Plaintiff's Works by, for example, using the confusingly similar marks to attract consumers to Defendants' unauthorized distribution of the Works. *See* FAC ¶¶ 535, 537. Plaintiff alleges that this use of the marks causes confusion in that it leads consumers and other users to mistakenly believe that Defendants' distribution of the Works is authorized by Plaintiff or accrues to Plaintiff's benefit, when this is not the case. *Id.* Insofar as Defendants contend that it is not confusing to use Plaintiff's marks (or similar ones) in connection with the unauthorized distribution of Plaintiff's Works, this is not compelling and Defendants have cited no cases so holding. An analogous example using physical goods demonstrates the validity of this theory. Person X sells pirated copies of movies, advertising them with posters that bear the trademarks of the persons who own the rights in the movies. It is plausible that a consumer seeing such trademarks on the posters would believe – wrongly – that the pirated copies are authorized. This would satisfy the third element – likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services – so these facts would give rise to a prima facie case of trademark

infringement. The claims Plaintiff asserts are analogous.

Defendants also fault Plaintiff for not clearly pleading which of the Defendants allegedly "tagged" the Works with metadata containing the infringing marks. The Court agrees the FAC is deficient in this regard. The FAC alleges only in the passive voice that the Works "are 'tagged'" with the metadata, without alleging facts showing that the Defendants "tagged" the Works. Plaintiff attributes the tagging to Defendants by making an assumption, and not pleading facts, as follows: "Brand has been greatly injured . . . by Defendants misleading, incorrect, false, and unfair 'tagging' of the Brand Registered Works. . ." FAC ¶ 72 . Plaintiff defends this approach by arguing that it cannot know which of the Defendants executed that step of the process. However, as noted, Plaintiff doesn't directly allege that Defendants did the tagging. Furthermore, although Plaintiff's argument that it doesn't know the identity of the "tagger" has some force, the different Defendants perform different services, and Plaintiff claims to have done extensive pre-filing investigation. It is not unreasonable to expect Plaintiff to at least narrow down which of the Defendants was the alleged tagger.

Plaintiff's allegations of this "tagging" are deficient for another reason: they are wholly conclusory and do not achieve a plausible claim. For example, as far as the Court can discern, to the extent that the Works are tagged with Plaintiff's marks or marks that are confusingly similar, it is just as plausible that these tags were placed there by Plaintiff (or on Plaintiff's behalf) and were part and parcel of the Works before Defendants' alleged unauthorized distribution. Using Plaintiff's packaging analogy, the tags could be part of the original packaging, not something added on by any Defendant. Absent some factual allegation attributing the tagging to some Defendants and not to Plaintiff, Plaintiff's "tagging" references are insufficient. Similarly, despite the FAC's loquaciousness and excessive number of examples, it does not, as far as the Court can tell, point to specific examples of its marks (or confusingly similar ones) being used in metadata. Because Plaintiff's allegations of

"tagging" are wholly conclusory, and because they underlie Plaintiff's trademark claims, Plaintiff fails to state its trademark claims.

The Motion to Dismiss the trademark claims is therefore **GRANTED** and these claims are **DISMISSED**.

**3. Plaintiff's State Law Unfair Competition Claims Also Fail.**

Plaintiff's seventh claim is for common law unfair competition under California law, a claim equivalent to the Lanham Act claim. Plaintiff's eighth claim is for unfair competition in violation of Cal. Bus. & Prof. Code § 17200, a claim equivalent to the trademark infringement claim. Indeed, as Plaintiff acknowledges, its trademark infringement claims and its unfair competition claims are premised on the same theories. Thus, the defects identified above with respect to Plaintiff's federal trademark claims also infect Plaintiff's state law unfair competition claims, and the latter are dismissed on the same basis. Indeed, it bears noting that the unfair competition claims are particularly difficult to decipher as they consist of little more than strings of boilerplate.

But the unfair competition claims are ill-pled for the additional reason that they allege fraudulent conduct, *see, e.g.*, FAC ¶¶ 549, 561, but are not pled with the specificity required by Fed. R. Civ. Proc. 9(b). Plaintiff does not respond at all to this argument in the motion, thereby conceding it.

The Motion to Dismiss Plaintiff's state law unfair competition claims is therefore **GRANTED** and these claims are **DISMISSED**.

**B. Plaintiff Fails to State a Claim under the Digital Millenium Copyright Act.**

Plaintiff's fourth claim is for violation of the Digital Millenium Copyright Act ("DMCA"), 17 U.S.C. § 1203 *et seq*. The DMCA is aimed at deterring copyright infringement by protecting "copyright management information" ("CMI"). The DMCA prohibits distributing false CMI, removing or altering CMI, or distributing works knowing the CMI has been removed or altered, with the intent to induce or

conceal infringement, or knowing that it will induce or conceal infringement. 17U.S.C. § 1202(a), (b). The act defines CMI as the information about the copyright that is "conveyed in connection with copies" of the work, including the title of the work, the author of the work, the name of the copyright owner, and identifying numbers or symbols referring to copyright information. *See* 17 U.S.C. § 1202(c).

Here, Plaintiff's DMCA claim rests on two allegations: (1) that Defendants placed false CMI on the Works it distributes without authorization in violation of § 1202(a) (*see*, *e.g.*, FAC ¶ 527), and (2) Defendants altered or removed Plaintiff's CMI from the Works in violation of § 2012(b) (*see*, *e.g.*, FAC ¶ 528). Defendants argue that these claims fail on numerous bases.

The Court will first address the § 1202(a) claim. First, Defendants contend that the false CMI that they allegedly placed on the Works is not CMI under the statutory definition. Defendants point out, for example, that to the extent the false CMI consists of internet domain names, one court has ruled that an internet domain name is not CMI. *See Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*, No. 11 C 5177, 2012 WL 414803, at *6 (N.D. Ill. Feb. 8, 2012) ("poetrygift.com, at best, an indicator of the seller of the product, which says nothing about the copyright status of the product; in the same way, Amazon.com does not suggest that Amazon owns copyrights with respect to every product it sells."). However, false CMI is by definition false information, including the name of the author or copyright owner of the work. Plaintiff argues that a consumer could interpret a domain name placed on the Works as indicating the creator or owner of the Work, which is CMI. The Court agrees and thus rejects this basis of the motion.

Second, Defendants contend that Plaintiff does not adequately plead that they placed the false CMI on the Works with the intent to induce or conceal infringement. The Court agrees. The FAC lacks any allegations indicating which of the Defendants attached the false CMI to the Works, and any corresponding allegations going to the wrongdoer's intent. Furthermore, the FAC also pleads that the Works retain

Plaintiff's true CMI: that Plaintiff's CMI still appears on the Works undermines the inference that the allegedly false CMI was placed on the Works with the intent to induce or conceal infringement by concealing Plaintiff's CMI. Absent affirmative allegations of intent, the claim is insufficiently pled.

As to the § 1202(b) claim – that Defendants removed or altered Plaintiff's CMI – the FAC again fails to state a claim. First, again, the FAC does not indicate which of the Defendants removed Plaintiff's CMI. Second, the FAC's allegations of what is Plaintiff's CMI are extremely confusing such that it is not at all clear what Plaintiff is alleging. The Court declines to commit further resources trying to clearly explain why Plaintiff's confusing allegations about its CMI do not plausibly state any clear claim, but instead refers to Defendants' opening brief at 20:27-21:21 and reply at 9:18-10:7.

For the foregoing reasons, Plaintiff fails to state a claim under the DMCA. The Motion to Dismiss this claim is therefore **GRANTED** and it is **DISMISSED**.

**C. Plaintiff Fails to State Any Claim Against Cox Enterprises Inc. ("CEI")**

Finally. Defendants move to dismiss Cox Enterprises, Inc. ("CEI") in its entirety on the ground that Plaintiff does not allege any facts showing CEI was directly involved in the alleged misconduct. As a result, Plaintiff is seeking to hold CEI liable for the alleged conduct of its subsidiary, CMG, without pleading facts necessary to establish alter ego liability. The Court agrees.

The FAC appears to have no allegations charging CEI itself with any conduct. Rather, Plaintiff just lumps CEI it together with its subsidiary CMG. CMG's liability, stems from its ownership of the websites on which the unauthorized Works appear. Although CEI is CMG's parent corporation, it is axiomatic that that relationship does not establish a parent's liability for the acts of a subsidiary. *U.S. v. Bestfoods*, 524 U.S. 51, 52 (1998) ("It is a general principle of corporate law that a parent corporation … is not liable for the acts of its subsidiaries."). Rather, a parent can be held liable for a subsidiary if it is the subsidiary's alter ego. *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003) (alter ego doctrine allows the court

to disregard corporate form and hold the parent corporation liable for the subsidiary's misconduct). The FAC pleads no facts that would establish any of the elements of alter ego liability. The claims against CEI must therefore be dismissed.

**D. Elaboration After Oral Argument.**

None of the points made at oral argument persuade the Court to depart from the ruling set forth herein. However, it seems that counsel could benefit from the Court further elaborating on the problems with the FAC.

Plaintiff's counsel suggested that Plaintiff could have submitted far more evidentiary material with the FAC and offered to do so. This would not cure the FAC's defects. The issue is not that Plaintiff's FAC is too short; it's that it is (1) too short on necessary, comprehensible, operative **factual allegations**, clearly applicable to plainly-invoked legal theories and (2) far too long an extraneous matters like strings of boilerplate, irrelevant characterizations, lengthy series of indeterminate and/or alternative constructions, and extensive evidence.[3] For example, while the FAC devotes many paragraphs to describing Plaintiff's history and the minutiae of some of its brands and includes many screenshots of videos and screenshots of metadata – none of which is necessary in a complaint – it fails to describe the business operations of some of the Defendants so that their roles in this alleged wrongdoing could be understood. Thus, while based on the FAC it seems that Defendant Brightcove is merely a software company that created the video player embedded in the CMG websites, at oral argument counsel explained that Brightcove distributes the videos through some kind of syndication – that it is not merely a passive software company whose application happens to be the one CMG uses. The FAC should **allege as facts** the foundation necessary to establish who the Defendants are and their role in the

[3] The opposition is similarly unfocused in that is does little to clarify the FAC and adds other extraneous matter like ad hominem attacks, threats of sanctions motions, and similar overheated remarks. These rhetorical gestures are not effective as legal argument and again distract from substance and simply waste the Court's time and resources.

alleged infringement scheme.

Plaintiff's counsel also explained that Plaintiff's trademark claims are for both passing off and reverse passing off. The FAC by no means makes this clear. The FAC should clearly identify the theories Plaintiff is pursuing, and, in an orderly and coherent fashion, expressly allege **the facts** underlying each theory. Counsel also explained the DMCA claims more clearly, but the kinds of comprehensible facts that Plaintiff asserted at oral argument are not clearly set forth in the FAC. In addition, the FAC relies on several definitions of the categories of intellectual property and types of CMI and metatags in issue, but these definitions are frankly jumbled and unclear. This is not offered as a comprehensive explanation of the problems with the FAC, but the Court hopes counsel will take note of these examples and apply a more critical eye overall to any amended complaint he may file. In short, should Plaintiff choose to amend its complaint, it should consist mostly of factual allegations, clearly associated with expressly-invoked legal theories, amounting to a "short and plain statement of the claim." Fed. R. Civ. Proc. 8(a).

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Counts IV-VIII, and Cox Enterprises Inc. is **GRANTED**. Plaintiff may attempt to cure the FAC's deficiencies by filing a Second Amended Complaint within thirty (30) days of the issuance of this order.

Dated: December 6, 2016

HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE