UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

BRAND TECHNOLOGIES, INC.,

Plaintiff,

v.

COX ENTERPRISES, et al.,

Defendants.

Case No. CV 16-05038 AB (JEMx)

ORDER **GRANTING IN PART AND DENYING IN PART** MOTION TO DISMISS SECOND AMENDED COMPLAINT

Before the Court is a Motion to Dismiss Second Amended Complaint ("Motion," Dkt. No. 95) filed by Defendants Cox Media Group LLC, AOL Inc., 5 Minutes LLC, Verizon Digital Media Services, Inc., and Brightcove, Inc. ("Defendants"). Plaintiff Brand Technologies, Inc. ("Brand") filed an Opposition and the Defendants filed a Reply. For the following reasons, the Court **GRANTS** in part and **DENIES** in part the Motion.

//

//

## I. BACKGROUND

The Court previously set out the factual background of this case in its December 6, 2016, Order Granting Motion to Dismiss First Amended Complaint. *See* Dkt. No. 79. In its Second Amended Complaint ("SAC," Dkt. No. 90), Brand alleges that it licensed defendant 5 Minutes (sometimes "5min"), a subsidiary of defendant AOL, to distribute some 545 of Brand's original digital videos ("Brand Videos") over the internet through the 5 Minutes Network, using a proprietary 5 Minutes Player. SAC ¶¶ 26-29. In order to effectively manage the videos in its library and the advertising revenues those videos generated, AOL/5 Minutes software automatically included certain metadata in the HTML code for each video, including an account number unique to Brand (a.k.a., "syndicator ID" or "sid"), which was 1131, and a number specific to each video ("VideoID"). SAC ¶ 51. Brand alleges that the 5 Minutes sid allowed the "5min Network [to] identify the author and/or copyright owner of a work and . . . know to whom payments for the exploitation of the work should go," and the VideoID allowed the 5 Minutes Network to "specifically identify the desired content." SAC ¶ 52. The agreement between Brand and AOL/5 Minutes terminated on April 7, 2015, and since then, there has been no authorized use of the Brand Videos on the internet. SAC ¶¶ 77-78.

However, all of the Brand Videos produced for the 5 Minutes Network continue to be distributed through other networks and actively monetized. SAC ¶ 79. Brand discovered that defendant Brightcove is distributing the Brand Videos over its "Brightcove Network," a content distribution network that competes with the 5 Minutes Network, to websites owned and operated by defendant Cox Media Group ("CMG"). SAC ¶ 58, 59, 70, 80. The Brand Videos are displayed in a Brightcove player embedded on the CMG websites. SAC ¶ 86.

Brand examined the HTML code associated with the Brand Videos appearing on CMG websites and found that the code includes 5 Minutes source-identifying metadata, which indicate that 5 Minutes gave CMG access to the Brand Videos. SAC

¶¶ 87-89. A CMG manager also admitted at a conference that CMG obtained access to the Brand Videos from 5 Minutes. SAC ¶ 74.

Brand also alleges that in order to manage the Brand Videos accessible through the Brightcove Network, Brightcove changed some of the metadata. *See, e.g*, SAC ¶¶ 101, 102. Most importantly, instead of the sid that 5 Minutes used to identify Brand as the owner of the videos (1131), the HTML code for the videos distributed over the Brightcove Network includes a "data-account" metadata field that has a number identifying CMG (1398322598). SAC ¶ 90. Brightcove automatically assigned CMG's data-account number to the Brand Videos. SAC ¶ 102. Brand alleges that its sid and CMG's data-account metadata are copyright management information ("CMI"), such that it violated Section 1202(b) of the Digital Millenium Copyright Act, 17 U.S.C. § 1203 *et seq*., to remove Brand's sid, and it violated § 1202(a) to insert CMG's data-account number, which Brand claims is false CMI. Brand also alleges that CMG placed a visible "Palm Beach Post" watermark on some of the videos, that this watermark identified CMG as the copyright owner, that the watermark is false copyright management information, and that CMG unlawfully applied it to the Brand Videos. SAC ¶ 105.

Based on the foregoing factual allegations, Brand asserts the following six claims: (1) falsification of copyright management information in violation of 17 U.S.C. § 1202(a), against CMG, based the insertion of CMG's Brightcove data-account metadata and the Palm Beach Post watermark ; (2) removal/alteration of copyright management information in violation of 17 U.S.C. § 1202(b), against AOL and CMG, based on the removal of Brand's 5 Minutes sid; and claims (3) through (6) for copyright infringement against CMG, Brightcove, VDMS, and AOL. Brand asserts no claims against 5 Minutes.

Defendants now move to dismiss Brand's claims under the DMCA (claims 1 and 2), and to dismiss 5 Minutes. They argue that this is a copyright infringement action only, and that the claims under §§ 1202(a) and (b) of the DMCA should be

dismissed because the metadata and the watermark that these claims turn on are not "copyright management information," among other reasons. Defendants also move to dismiss 5 Minutes on the ground that no claims are pled against it.

**II. LEGAL STANDARD**

Fed. R. Civ. Proc. ("Rule") 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must provide enough detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must also be "plausible on its face," allowing the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Under Rule 12, a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on the motion, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (2009) (internal quotation marks omitted).

The court generally may not consider materials other than facts alleged in the complaint and documents that are made a part of the complaint. *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994*), overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). However, a court may consider materials if (1) the authenticity of the materials is not disputed and (2) the plaintiff has alleged the existence of the materials in the complaint or the complaint "necessarily relies" on the materials. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation

omitted); *Branch*, 14 F.3d at 454. The court may also take judicial notice of undisputed facts that are contained in extrinsic materials. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Lee*, 250 F.3d at 689-90.

## III. DISCUSSION

### A. 5 Minutes is DISMISSED.

Brand concedes that it asserts no claims against 5 Minutes. But, citing Fed. R. Civ. P. 19(a)(1), the rule concerning compulsory joinder, Brand argues that 5 Minutes should not be dismissed because "it is a required party that must be included in the litigation." *See* Opp'n 24:6-10. This argument fundamentally misunderstands Rule 19; it does not allow a plaintiff to keep as a defendant in a lawsuit a person against whom it has not asserted any causes of action. The motion to dismiss 5 Minutes is therefore **GRANTED**.

### B. The Motion to Dismiss DMCA Claims (Claims 1 and 2) Based on the sid and Data-Account Metadata is GRANTED.

The Digital Millenium Copyright Act ("DMCA"), 17 U.S.C. § 1203 *et seq.*, is aimed at deterring copyright infringement by protecting "copyright management information" ("CMI"). Here, Brand asserts claims under two subsections of the DMCA: the subsection prohibiting a person from providing or distributing false copyright management information (17 U.S.C. § 1202(a)[1]) and the subsection prohibiting a person from removing or altering copyright management information (17 U.S.C. § 1202(b)[2]).

---

[1] 17 U.S.C. § 1202(a) provides that "No person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement— (1) provide copyright management information that is false, or (2) distribute or import for distribution copyright management 17 U.S.C. § 1202(b) information that is false."

[2] 17 U.S.C. § 1202(b) provides that "No person shall, without the authority of the copyright owner or the law—(1) intentionally remove or alter any copyright management information, [or] (2) distribute . . .copyright information [or] (3) distribute . . . works . . . knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, knowing . . .

Brand alleges in its first cause of action that CMG violated 17 U.S.C. § 1202(a) by causing the CMG Brightcove data-account number to be inserted as metadata into the HTML code for the Brand Videos the Brightcove Network displayed on CMG's websites. Brand alleges in its second cause of action that AOL and CMG violated 17 U.S.C. § 1202(b) by causing Brand 5 Minutes sid metadata to be omitted from the HTML code for the Brand Videos the Brightcove Network displayed on CMG's websites. Defendants argue that neither the data-account number nor the sid metadata are copyright management information, and that therefore these claims must be dismissed. They also argue that because the SAC alleges that Brightcove was the entity that removed Brand's sid and inserted CMG's data-account number neither AOL nor CMG can be held liable for that conduct. The Court agrees.

**1. The sid and Data-Account Metadata are Not Copyright Management Information.**

As noted, the parties disagree over whether the metadata added to and removed from the Brightcove HTML code is in fact "copyright management information." None of the cases either side cites is factually on point. Upon considering the statutory definition and Brand's allegations, the Court finds that Brand has not alleged facts establishing that the metadata is copyright management information.

As relevant to Brand's claims, the DMCA defines copyright management information ("CMI") as "any of the following information conveyed in connection with copies . . . or displays of a work, including in digital form: . . . (2) The name of, and other identifying information about, the author of a work. (3) The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright . . . (7) Identifying numbers or symbols referring to such information or links to such information." 17 U.S.C. § 1202(c)(2), (3), and (7).

---

that it will induce, enable, facilitate, or conceal an infringement of any right under this title."

Brand alleges that CMG's data-account number and Brand's 5 Minute sid are CMI because they are numbers that the Brightcove Network and 5 Minutes use to identify the author and/or copyright owner of works uploaded onto their respective Networks. *See, e.g.*, SAC ¶¶ 5 (the sid allowed "5min Network [to] identify the author and/or copyright owner of a work"), ¶ 62 ("the Brightcove 'data-account' that the Brightcove Network uses to identify the author and/or copyright owner of the work is assigned to every video uploaded using that person/entity's Brightcove Network account") ; ¶ 119 (the 5Minutes sid "uniquely and effectively identified a specific content creator as author and/or copyright owner of that video.").

However, although the SAC includes a lengthy explanation of *how* 5Minutes and Brightcove insert these numbers as metadata into the HTML code for the videos on their networks, the SAC's allegations that these numbers are in fact CMI – that they are used *to identify the author or copyright owner of the work* – are wholly conclusory. Brand points specifically to SAC ¶¶ 60,62-65, 90, 93, 100-102, and 104 as showing that "Brightcove and the Brightcove Network use [the data-account ID] as an identifier of the author and/or copyright owner of a video." *See* Opp'n 6:27-7:3. The Court has reviewed these paragraphs, and on the crucial issue – that the sid and data-account numbers are used to identify the author or copyright owner – they are either silent or are utterly conclusory.

When stripped its of conclusory allegations, the SAC shows that these numbers are simply each network's account numbers for its account-holders (like Brand or CMG) who upload videos. This is evident from Brand's explanation of the uploading process itself, which is similar for both the 5Minutes Network and the Brightcove Network. For example, as to the 5 Minutes Network, a Brand employee would "log[] into the 5min Console web interface . . . using Brand's login name and password," upload the video file, enter certain metadata pertaining to the content of the video, and then "finish" the operation, at which point 5Minutes would attach additional metadata, including the Brand sid 1131, which "was assigned to every video uploaded using

Brand's 5min account." SAC ¶¶ 46-51; ¶¶ 96-97 (suggesting CMG followed similar process to upload videos to Brightcove Network). Stated plainly, these allegations show that 5Minutes and Brightcove include each account-holder's account number (sid or data-account) as metadata in the HTML code associated with the videos those account-holders upload. To conclude from this unremarkable fact that 5 Minutes and Brightcove also use these account numbers to designate authorship or the copyright owner is a leap of logic that the SAC contains no facts to support.

In its opposition, Brand argues that these numbers are CMI because "Brightcove Network advertisers and content licensors rely on the 'data-account' ID attached to a respective Brightcove Network video to electronically route advertising/royalty payments and licensing/permissions inquiries for the video to its author/copyright owners." Opp'n 5:19-23 (citing SAC ¶¶ 63, 100). If advertisers and licensors rely on the data-account ID to identify the author/copyright owner, that *may* plausibly suggest that the account numbers are CMI, because it shows that third parties understand the numbers as indicating authorship or ownership – in other words, that third parties understand the numbers to be CMI. But the cited paragraphs make no such allegations. What these paragraphs *do* allege is that the *Brightcove Network* – *not* outside advertisers or other third-parties – uses the data-account ID to route payments: the "Brightcove 'data-account' and 'Video-ID' metadata fields are also crucial to the proper operation of the Brightcove Network, as it accepts, distributes, and monetizes third party content" and without it "Brightcove Network. . . doesn't know who to pay for exploiting a work (e.g., by selling advertising against it") (SAC ¶ 63); "Brightcove uses the 'data-account' metadata field . . . for monetization purposes so that the Brightcove Network knows to whom payments for the exploitation of these copyrighted works should go" (SAC ¶ 100). These paragraphs say nothing about third-parties relying on the data-account ID for *any* purpose, let alone as CMI. Instead, they show that Brightcove uses the data-account number as an account number.

Brand suggests that the fact that 5Minutes and Brightcove rely on account numbers to pay advertising revenue to the account-holders shows that the account numbers are CMI, *see* Opp'n 10:18-22, but this inference is not warranted. For example, it is plausible that account-holders may upload videos onto the networks pursuant to a license from the author or copyright owner, and may on that basis be entitled to payment from Brightcove, without being, or even claiming to be, the author or copyright owner. By embedding these account numbers in a video's metadata, the respective networks appear to be simply recording which account-holder uploaded it. In summary, the SAC is devoid of facts that could plausibly establish that the account numbers (sid and data-account numbers) are anything but account numbers, and instead are proxies for authorship or copyright ownership. Therefore, Brand's § 1202(a) claim and its § 1202(b) claim fail insofar as they are based on the sid and data-account numbers.

**2. The SAC Does Not Allege that AOL or CMG Removed CMI or Provided False CMI.**

The SAC repeatedly alleges, and the Opposition concedes, that Brightcove is the entity that provided allegedly false CMI by including its data-account metadata in its HTML code. *See, e.g.*, Opp'n at 4 ("Here, the SAC alleges that when a user of the Brightcove Network logs into the network using his/her credentials and uploads a video, the Brightcove Network automatically assigns a 'data-account' ID to that video. . . "); *id.* at 10:18-22 ("Having already identified the user using his/her account credentials, the Brightcove Network automatically assigned the "data-account' ID that the Brightcove Network has associated with that user to the video . . ."); *see also* SAC ¶ 101 ("the Brightcove Network systematically listed CMG's data-account ID . . ."); *id.* ¶ 102 ("CMG knew that the Brightcove Network would automatically assign CMG's data-account ID to the videos . . ."). And although the SAC does not expressly allege how Brand's 5 Minutes sid metadata was omitted from the Brightcove HTML code, it plainly implies that Brightcove's software also does this

automatically when it processes videos for distribution. *See* SAC ¶¶ 60-65 (explaining Brightcove's process for uploading videos and attaching metadata).[3]

What is also clear from these allegations is that neither AOL nor CMG were the parties that allegedly provided false CMI or altered Brand's CMI. Brand attempts to parlay CMG's act of uploading the videos onto the Brightcove Network into CMG's culpability for "CMG actively provid[ding] false CMI." *See* Opp'n 10:23-27. But Brand's argument that CMG "actively provided" false CMI is flatly contradicted by its allegations that Brightcove is the entity that added its CMG data-account number and omitted Brand's 5 Minutes sid. Brand's own allegations establish that neither CMG nor AOL are "person[s]" who "provide[d] copyright management information that is false" or "intentionally remove[d] or alter[d] any copyright management information." Therefore, neither AOL nor CMG can be held liable for such conduct.

For these reasons, Brand does not state a claim against CMG for violation of § 1202(a) based on Brightcove's insertion of its data-account metadata in its HTML code, or against CMG and AOL for violation of § 1202(b) based on Brightcove's omission of Brand's 5 Minutes sid metadata from Brightcove's HTML code.

**C. The Motion as to the Section 1202(a) Claim (Claim 1) Based on CMG's Application of the Palm Beach Post Watermark is <u>DENIED</u>.**

Brand also alleges that CMG violated § 1202(b) by applying a watermark for "Palm Beach Post" – one of its publications – on Brand videos displayed on the Palm Beach Post website. The court maintains its previous determination that this watermark could *plausibly* be CMI in that a person may interpret the watermark to indicate the work's author or copyright owner. The court previously dismissed this claim on the ground that Brand did not adequately plead intent or which party applied the watermark. Brand has cured these deficiencies, pleading that CMG placed the

---

[3] Given Brightcove's pivotal role in the alleged DMCA violations, it is striking that Brand does not assert any of its DMCA claims against Brightcove. Nor has Brand explained its decision to not assert these claims against Brightcove.

watermark on the videos, that the watermark obscured Brand's own watermark, and that CMG did this to suggest that CMG was the author or copyright owner. *See* SAC ¶ 105.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion as follows:

- 5Minutes LLC is hereby **DISMISSED**.
- Claim 1 based on the insertion of CMG's Brightcove data-account metadata is **DISMISSED**.
- Claim 2, in its entirety, is **DISMISSED**.

Brand has already amended its complaint twice, and it does not appear that the defects discussed herein can be cured by amendment. **These dismissals are therefore with prejudice.**

The Motion is **DENIED** as to Claim 1 solely insofar as that claim is based on CMG's alleged application of Palm Beach Post watermark to Brand's videos.

**IT IS SO ORDERED.**

Dated: March 23, 2017

HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE